UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LEAK,

                Plaintiff,           Civil Action No. 21-12327

v.                              Terrence G. Berg
                              United States District Judge

JODI DeANGELO, *et al.*,          David R. Grand
                              United States Magistrate Judge

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (ECF No. 31)

On September 23, 2021, plaintiff Michael Leak ("Leak"), an incarcerated person, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1). At the time of the events at issue in his complaint, Leak was confined at the Woodland Correctional Facility ("WCC") in Whitmore Lake, Michigan. (*Id.*, PageID.2, 26).

In his complaint, Leak brings First, Eight, and Fourteenth Amendment claims against three employees of the Michigan Department of Corrections ("MDOC") who were employed at WCC at the time of the events in question: Warden Jodi DeAngelo ("Warden DeAngelo"); Corrections Officer Logan ("Officer Logan"); and Food Supervisor Gallimore ("Supervisor Gallimore") (collectively "Defendants"). (*Id.*, PageID.2-3). An Order of Reference was entered on April 18, 2022, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 20).

Now pending before the Court is a Motion to Dismiss or, in the Alternative, for Summary Judgment, which was filed by Defendants on December 5, 2022.  (ECF No. 31). Leak filed a response to this motion on December 19, 2022 (ECF No. 33), and Defendants filed a reply on January 3, 2023 (ECF No. 35).[1]

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment **(ECF No. 31)** be **GRANTED IN PART** and **DENIED IN PART**.

## II.    REPORT

### A.    The Claims in Leak's Complaint

As set forth above, at all relevant times, Leak was confined at WCC.  In his complaint, he brings the following claims against Supervisor Gallimore, Officer Logan, and Warden DeAngelo in both their individual and official capacities:[2]

---

[1] Subsequently, Leak filed an unauthorized "Second Response" to Defendants' dispositive motion. (ECF No. 36).  Although such a filing is not permitted under the court rules and could be stricken, because Leak is proceeding *pro se*, the Court has considered its contents in ruling on the merits of the instant motion.  The Court notes, however, that many of the facts and arguments set forth in that filing pertain to incidents that allegedly occurred after the filing of the complaint in this case and, therefore, are not relevant to the claims before the Court.

[2] Leak's factual allegations against the three named defendants will be discussed in greater detail in the context of the Court's analysis of the merits of his claims, *infra* at 6-20.

- Leak alleges that Supervisor Gallimore was "found guilty"[3] of abuse, retaliation, and threatening behavior against him, and violated the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30302, *et seq.* (ECF No. 1, PageID.5). Leak asserts that Supervisor Gallimore's actions violated his First and Eighth Amendment rights. (*Id.*, PageID.14).

- Leak alleges that Officer Logan abused his authority when he forced Leak to perform job duties that violated his "limited use of right arm" medical detail by giving him "a 'direct order' to dump well over fifty trays full of food," causing him "permanent injury," in part in retaliation for complaints Leak voiced about Supervisor Gallimore. (*Id.*). Specifically, Leak contends that his right arm was "already broken," and that dumping the trays caused "a loud popping sound from [his] right arm" which resulted in significant pain. (*Id.*, PageID.15). Leak asserts that Officer Logan violated his First and Eighth Amendment rights.

- Leak alleges that Warden DeAngelo violated his Fourteenth Amendment due process rights by improperly investigating his allegations of abuse, retaliation, and physical injury. (*Id.*, PageID.5). Leak further claims that Warden DeAngelo "became responsible for the due process violations when she failed to correct them in the course of performing her supervisory responsibilities …." (*Id.*, PageID.6).

In the instant motion, Defendants argue that Leak's complaint fails to state a claim or, alternatively, is subject to summary judgment. These arguments are addressed below.

## B. Standard of Review

### 1. Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[3] In his complaint, Leak often writes with capitalized letters throughout sentences. All quotations referenced in this brief have been normalized for standard sentence structure and are quotes as to substance only.

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading[.]" *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

        2.    *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative

showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.   Analysis

#### 1.   *Leak's Claims Against Supervisor Gallimore*

As set forth above, Leak alleges that Supervisor Gallimore was "found guilty" of abuse, retaliation, threatening behavior, and "a P.R.E.A. inwhich [sic] was verbal." (ECF No. 1, PageID.5). Specifically, Leak claims that he contacted the PREA hotline in January 2021 to report that Supervisor Gallimore had sexually harassed him on December 27, 2020. (*Id.*, PageID.12, 14). He also claims that, at some unspecified point in time, Supervisor Gallimore called "people" – including Officer Logan – "telling them to check [him]," which "elivated [sic] [the PREA] complaint into retaliation against [Leak] for engaging in protected conduct." (*Id.*, PageID.14). These are the only allegations in Leak's complaint against Supervisor Gallimore, and it is these allegations that form the basis of his First and Eighth Amendment claims against her.

In their motion, Defendants argue that Leak's vague allegations against Supervisor Gallimore are insufficient to state a claim against her. (ECF No. 31, PageID.182). The Court agrees. As this Court has recognized, "it is fundamental that '[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal.'" *Wilkins v. Bush*, No. 22-11937, 2023 WL 199258, at *3 (E.D. Mich. Jan. 17, 2023) (quoting *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012)). As the Sixth Circuit has explained, "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that

6

demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (emphasis in original) (internal quotations omitted).  This means that the Court "must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and [] cannot ascribe the acts of all [the defendants] to each individual defendant." *Id.*

Here, even if Leak is correct that Supervisor Gallimore was "found guilty" of something, as he alleges (ECF No. 1, PageID.14), Leak did not plead sufficient facts underpinning such an alleged guilty finding to state a claim for relief against her.  Indeed, Supervisor Gallimore's merely having been "found guilty" of violating an MDOC policy or work rule would not itself rise to the level of a constitutional violation.  *See Brooks v. Washington*, No. 21-cv-19, 2021 WL 2024706, at *3 (W.D. Mich. May 21, 2021) ("a defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation").  Thus, Leak's claims against Supervisor Gallimore should be dismissed under Fed. R. Civ. P. 12(b)(6).

Moreover, even if the Court were to look beyond the complaint, a review of Leak's own deposition testimony makes clear that summary judgment is warranted on his claims against Supervisor Gallimore.  At his deposition, Leak was asked about Supervisor Gallimore's alleged abuse, retaliation, threatening behavior, and sexual harassment, and he testified that "[e]verything was verbal" – including the alleged retaliation.  (ECF No. 31-2, PageID.204-05).  Admittedly, Supervisor Gallimore never made physical contact with Leak (or even threatened to do so), and she never wrote him a misconduct ticket.  Specifically, when questioned at his deposition, Leak testified:

Q.      … that's what I'm trying to get at now.  Was it still just all verbal?

A.      Everything was verbal.  It was never escalated more than verbal.  Everything was just words to where they made me uncomfortable and kind of made me a little scared at times, too ….

\*      \*      \*

Q.      So her adverse action was also verbal?  The way she was, like, verbally lashing out at you?

A.      Yes.  Everything was verbal.  She never touched me, never even mentioned touching me.  Everything was verbal.  And the threatening part was when she picked up the phone and started calling my housing unit officer, and that's where I felt threatened.

\*      \*      \*

Q.      And what happened to you as a result of that?  I mean, did you – did anything happen to you?  Did you get a misconduct ticket from her?  Did anything –

A.      No; no.

Q.      No.  Okay.

A.      No, she – no; no.  No writeups.  No writeups whatsoever….

(*Id.*).  The law is clear that a prison official's mere isolated use of such alleged harassing language does not give rise to Eighth or First Amendment claims.  *See, e.g., Campbell v. Carney*, No. 13-13770, 2013 WL 5312662, at \*2 (E.D. Mich. Sept. 20, 2013) ("The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.") (citing numerous cases for the proposition that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *see also Jamie v. Jenkins*, No. 19-10595, 2020 WL

7770893, at *13 (E.D. Mich. Dec. 30, 2020) ("minor harassment is insufficient to constitute adverse action" for purposes of a First Amendment retaliation claim).

For all of these reasons, Leak's claims against Supervisor Gallimore fail.

### 2.   *Leak's Claims Against Officer Logan*

As set forth above, in his complaint, Leak attributes five alleged constitutional violations to Officer Logan.  Specifically:

- Leak alleges that, on February 21, 2021, Officer Logan forced Leak, a "Level I inmate," to "dump well over fifty trays full of food in Level II."  (ECF No. 1, PageID.14).

- Second, Leak claims that Officer Logan forced him to perform work that was not his responsibility because he worked in the "sub-kitchen," not the housing units.  (*Id.*).

- Third, Leak also claims that Officer Logan abused his authority by ignoring his medical detail – which said "Limited use of Right Arm" – and requiring Leak to dump the fifty trays of food discussed above under threat of receiving a misconduct ticket, causing permanent injury.  (*Id.*).

- Fourth, Leak alleges that Officer Logan told him he would teach him a lesson "for writing a P.R.E.A. on Ms. Gallimore," which made Officer Logan's actions retaliatory.  (*Id.*).

- Finally, Leak alleges that Officer Logan harassed him on March 16, 2021, by snatching a blanket off Leak's cell door while Leak was naked, opening the door "un-announced," and calling Leak a "little dick cry-baby."  (*Id.*, PageID.16).

Leak alleges that Officer Logan's actions in these respects violated his First and Eighth Amendment rights.

### a.   *Eighth Amendment Claim*

In order to establish an Eighth Amendment claim, Leak must prove that Officer Logan was deliberately indifferent to his serious medical needs.  To succeed on such a

9

claim, Leak must satisfy two elements: one objective and one subjective.  Specifically, he must show that he had a serious medical need (the objective prong) and that the defendant, being aware of that need, acted with deliberate indifference to it (the subjective prong). *See Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010).

For purposes of the instant motion, the Court will assume that Leak's right arm injury[4] satisfies the objective prong of the deliberate indifference standard, in that it was more than "mere discomfort or inconvenience."  *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal quotations omitted).  To satisfy the subjective prong, however, Leak must show that Officer Logan knew of and disregarded an excessive risk to Leak's health or safety by showing that (1) Officer Logan was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) he actually drew the inference.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Below, each of Leak's alleged Eighth Amendment violations are evaluated against this standard.

### (1)   The Alleged Arm Injury

As set forth above, Leak alleges, in relevant part, that Officer Logan abused his authority as a Corrections Officer and ignored his medical detail that restricted Leak to "light duty work assignment with limited use of right arm."  (ECF No. 31-4, PageID.214).  Leak claims that when he tried to show Officer Logan his medical detail, Officer Logan

---

[4] Leak testified at his deposition that he "got arrested with a broken arm."  (ECF No. 31-2, PageID.207).  Leak further claimed that between 2019 and the alleged incident with Officer Logan in February 2021, he did not receive any treatment for his broken arm and, because of the COVID-19 pandemic, he "had to sit in prison with a broken arm for months, and then [his] arm end[ed] up healing broke."  (*Id.*, PageID.208, 209).

said "fuck your lite [sic] duty detail" and ordered him to dump fifty food trays under the threat of receiving a misconduct ticket.[5]  (ECF No. 1, PageID.14, 17).  Leak further claims that he suffered significant pain and was permanently injured because of Officer Logan's actions in this regard.  (*Id.*).

Construing the evidence in the light most favorable to Leak, which the Court must do at the summary judgment stage, a genuine issue of material fact exists as to whether Officer Logan knew of and disregarded a substantial risk of serious harm when he ordered Leak to dump the food trays, as alleged.  Indeed, Officer Logan's alleged statement, "fuck your lite [sic] duty detail," implies he was aware that dumping the trays exceeded what he considered "light duty."  A question of fact also exists as to whether having to dump fifty trays involved only the "limited use" of Leak's right arm.

In their motion for summary judgment, Defendants point to several facts which they claim establish that Leak's Eighth Amendment claim against Officer Logan lacks merit.  First, Defendants point out that the medical detail in effect at the time of the alleged

---

[5] In his complaint, Leak also claims that part of his complaint about this incident stems from the fact that Officer Logan allegedly forced him to perform work that was not his responsibility because he worked in the "sub-kitchen," not the housing units, and because he was forced to work in a Level II setting as a Level I inmate.  (ECF No. 1, PageID.14).  But, even if Officer Logan's alleged actions in these respects somehow violated prison policy – a policy that Leak does not reference in any way – there are no constitutional protections against alleged violations of prison policy.  *See Brooks*, 2021 WL 2024706, at *3.  Moreover, a prisoner has no constitutional right to remain in any specific custody, nor does he have a constitutional right to a specific work assignment.  *See Miller v. Washington*, No. 19-cv-29, 2019 WL 1760132, at *4 (W.D. Mich. Apr. 22, 2019) ("Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification."); *Vandee v. Wetly*, No. 23-cv-126, 2023 WL 2472867, at *6 (W.D. Mich. Mar. 13, 2023) (no prisoner has a constitutional right to a particular job or to any job) (citing cases).  Thus, these aspects of Leak's complaint fail to state a claim for relief.

incident, dated February 10, 2021, says "No Restrictions" under the "Physical Limitation/Restriction" section.   (ECF No. 31, PageID.186) (citing ECF No. 31-4, PageID.214).  As noted above, however, elsewhere on the form it says: "Continue light duty work assignment with limited use of right arm."   (ECF No. 31-4, PageID.214). Defendants argue, then, that "[a] medical detail that contains no physical limitations and no restrictions, but simply advises limited use of one arm, would not give an officer notice that asking [Leak] to empty food trays would put him at serious risk of harm."  (ECF No. 31, PageID.186).   The Court disagrees with this conclusory assertion, as courts have recognized that forcing an inmate to perform duties that knowingly exceed his physical restrictions can, under certain circumstances, suffice to satisfy the subjective prong of an Eighth Amendment claim. *See, e.g., Jones v. Michigan*, 698 F. Supp. 2d 905, 914 (E.D. Mich. 2010) ("To show deliberate indifference to workplace safety, prisoners must show that prison officials knowingly compel[led] them to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful.") (internal quotations omitted).   And again, Officer Logan's alleged comment, "fuck your lite [sic] duty detail," suggests he was aware that the work he was ordering Leak to perform exceeded Leak's limitations.  Thus, the Court is not persuaded by Defendants' argument in this respect.

Defendants also argue that Leak's claims of "permanent injury" resulting from this incident are not supported by the medical records.  (ECF No. 31, PageID.187-88). Specifically, Leak testified at his deposition that, in 2019, he "got arrested with a broken arm" and that, between 2019 and February 2021, he did not receive treatment and his "arm

end[ed] up healing broke." (*Id.*, PageID.187) (citing ECF No. 31-2, PageID.207-09).

Defendants take issue, then, with Leak's allegation that, because of Officer Logan's

deliberate indifference, he re-fractured his arm and it healed "disformed [sic] … to the

point that the bone had to be removed and replaced with a metal rod and p[i]ns …." (ECF

No. 1, PageID.15, 17).   They argue that the deformity existed long before the alleged

incident with Officer Logan, comparing x-rays performed before and after this incident,

which show:

- April 22, 2020: "Old healed fractures of the proximal shafts of the radius and the ulna are present.  The fractures have healed with a volar lateral *bowing deformity*."

- February 24, 2021: "Two views of the right forearm demonstrate old healed trauma of the proximal shaft of the ulna and the radius.  The old trauma site is healed with callus formation, but there is an angulation/*bowed deformity* of the ulna and radius."

(ECF No. 31-4, PageID.215-16) (emphasis added).  According to Defendants, then, Leak

cannot prove that Officer Logan's alleged order to dump fifty food trays caused any injury

– let alone a permanent injury – as Leak's arm "was already deformed nearly a year before

the alleged incident with [Officer] Logan …." (ECF No. 31, PageID.188).

Again, the Court disagrees.  Viewing the facts in the light most favorable to Leak,

the non-moving party, a genuine issue of material fact exists as to whether Officer Logan's

alleged actions resulted in additional, permanent injury to Leak's right arm.  Leak kited

WCC healthcare just days after the incident at issue, complaining of increased pain in his

arm.  (ECF No. 34-5, PageID.275).  X-rays performed at that time showed soft tissue

swelling.  (*Id.*, PageID.276).  One month later, Leak reported continued right arm pain; he

13

was taken off work to ice his arm and rest, and he was approved for "trauma reconstructive surgery" of his right forearm.   (*Id.*, PageID.279).   While Leak might not ultimately persuade a jury that Officer Logan's actions caused additional injury to his arm, construing the evidence in the light most favorable to Leak, a genuine issue of material fact remains, necessitating the denial of summary judgment as to this aspect of Leak's Eighth Amendment claim against Officer Logan.

(2)   The Alleged PREA Violation

Leak also alleges that, on March 16, 2021, Officer Logan snatched a blanket off of his cell door, opened the door "un-announced" while Leak was naked, and called Leak a "little dick cry-baby."  (ECF No. 1, PageID.16).  Leak alleges that he reported Officer Logan's actions to the PREA hotline and "begged well over ten staff members to review the camera" for evidence of this incident, but his pleas were ignored.  (*Id.*).  At his deposition, Leak testified that Officer Logan's actions in this respect violated his rights under the Eighth Amendment.[6]  (ECF No. 31-2, PageID.210).

Even taking Leak's allegations as true, he has not stated a claim for an Eighth Amendment violation as to this incident.  "[C]ourts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement [of an - Eighth Amendment claim] because such conduct does not constitute the unnecessary and

---

[6] Leak also alleges that Officer Logan's actions violated PREA.  (ECF No. 31-2, PageID.210). However, the law is clear that PREA does not create an independent cause of action for prisoners to sue prison officials. *See Peterson v. Burris*, No. 14-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) (citing cases).  Thus, to succeed on a claim stemming from the alleged blanket-snatching incident, Leak must establish an Eighth Amendment violation.

wanton infliction of pain." *Lovely v. Armstrong*, No. 11-cv-204, 2011 WL 3813294, at *8 (W.D. Mich. Aug. 26, 2011) (citing cases). Moreover, as discussed above, *see supra* at 8-9, mere isolated harassment and verbal statements do not trigger constitutional protections. *See, e.g., Zimmer v. Unknown Metro*, No. 22-cv-200, 2023 WL 1878911, at *3 (W.D. Mich. Feb. 10, 2023) (citing cases). Thus, even if Leak's allegations are true – and Officer Logan pulled a blanket from Leak's window and referred to him in an inappropriate and offensive manner – such actions are insufficient to state an Eighth Amendment claim.

b.   *First Amendment Retaliation Claim*

Although the allegations in his complaint are not entirely clear, Leak also appears to plead a claim for First Amendment retaliation against Officer Logan. Specifically, Leak alleges that Officer Logan "told [him] face to face that he will teach [him] a lesson for writing a P.R.E.A. on Ms. Gallimore." (ECF No. 1, PageID.14). He then claims that "[a]n adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct." (*Id.*).

A claim for First Amendment retaliation involves establishing three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff likely to chill a person of ordinary firmness from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). In seeking summary judgment, Defendants argue that Leak has not satisfied any of these prongs. For

the reasons detailed below, the Court disagrees.

### 1. Protected Activity

As to the first prong, Leak claims that he engaged in protected activity when he "filed grievances" and "contact[ed the] P.R.E.A. hotline" to complain about Supervisor Gallimore's alleged actions. (ECF No. 1, PageID.14). It is clearly established that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Indeed, the Sixth Circuit has found that a prisoner engaged in protected conduct where he merely *threatened* to file a legitimate grievance. *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009). However, prisoners are protected only if the grievances they file are "not frivolous." *Herron*, 203 F.3d at 415.

As set forth above, Leak alleges that he filed a PREA grievance against Supervisor Gallimore, accusing her of sexual harassment, and that Supervisor Gallimore was "disciplined for being found guilty of threatening behavior …." (ECF No. 1, PageID.14). Defendants argue that because Leak admitted that the PREA grievance was based solely on verbal conduct, "that grievance may have been frivolous, since verbal harassment is insufficient to state a claim." (ECF No. 31, PageID.194). At the summary judgment stage, however, the Court cannot find as a matter of law that Leak's actions – in reporting through proper channels what he believed to be a PREA violation– do not constitute protected activity. This is especially so where, following Leak's protected activity, the accused prison officer was allegedly disciplined. Thus, the first element of a retaliation claim is at least arguably satisfied.

16

2.    Adverse Action

In order to establish the second prong of his First Amendment retaliation claim,

Leak must show that he suffered an adverse action. "[A]n adverse action is one that would

'deter a person of ordinary firmness' from the exercise of the right at stake." *Maben v.*

*Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 396).

"Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness

from exercising his or her rights is a question of fact." *Id.* (quoting *Bell v. Johnson*, 308

F.3d 594, 603 (6th Cir. 2002)). However, some adverse actions are so *de minimis* that they

do not rise to the level of a constitutionally cognizable injury. *Id.* "[T]his threshold is

intended to weed out only inconsequential actions, and is not a means whereby solely

egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X*,

175 F.3d at 398. Indeed, "unless the claimed retaliatory action is truly 'inconsequential,'

the plaintiff's claim should go to the jury." *Maben*, 887 F.3d at 266 (quoting *Bell*, 308

F.3d at 603); *see also Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011) ("[O]nly

*de minimis* violations should be dismissed as a matter of law; in general, the adverseness

question should survive the pleading stage.").

In their motion for summary judgment, Defendants argue that Leak's "conclusory

statement that he suffered an adverse action" is insufficient. (ECF No. 31, PageID.195).

Indeed, Defendants express confusion about Leak's allegations, saying:

> Plaintiff says he suffered an adverse action, but it is not clear what
> adverse action applies to Logan. Was it, being forced to work? Was
> it the wrongly alleged arm injury? Was it the blanket snatching that
> was mandated by the rules? These are not adverse actions that would
> deter a person of ordinary firmness from exercising their

17

> constitutional rights, yet they are the only allegations mentioned in
> Plaintiff's complaint against Logan.

(*Id.*) (internal citations omitted).  But, viewed in the light most favorable to Leak, the Court construes him to be asserting that Officer Logan gave him a direct order – under threat of receiving a misconduct ticket if he did not comply – to empty more than fifty trays full of food, despite knowledge that Leak had a medical detail which said "Limited use of Right Arm."  (ECF No. 1, PageID.14).  Courts have held that "the denial of medical care and removal of previously ordered medical accommodations" constitute adverse actions for purposes of a First Amendment claim.  *See Burley v. Abdellatif*, No. 16-12256, 2018 WL 3300315, at *9 (E.D. Mich. Jan. 26, 2018) (citing cases); *Ashley v. Boayue*, No. 22-1295, 2023 WL 2910533, at *6 (6th Cir. Jan. 10, 2023), *reh'g denied* (Feb. 6, 2023) (removing prescribed medical supplies from prisoner's cell "in response to his exercising his constitutionally protected right to file administrative grievances [], in an attempt to punish him and to discourage further grievance filings" raised "a genuine dispute of material fact as to whether this confiscation was an adverse action intended to discourage Ashley's exercise of his constitutionally protected right to file administrative grievances").  Here, if Officer Logan deliberately forced Leak to perform work exceeding his medical restrictions, such an action could deter a person of ordinary firmness from engaging in protected activity.  *Id.*  Thus, viewing the evidence in the light most favorable to Leak, there exists a genuine issue of material fact as to whether Officer Logan's actions in this respect constituted an adverse action for purposes of a First Amendment retaliation claim.  *Id.*

3.   Causation

With respect to the causation prong, Defendants argue that the temporal proximity between Leak's PREA grievance against Supervisor Gallimore (filed in January 2021) and the adverse action allegedly taken by Officer Logan (in February 2021) alone is "insufficient to establish retaliatory motive."  (ECF No. 31, PageID.196) (citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)).  Defendants go so far as to assert that Leak has not established "any motive between the alleged PREA grievance against Gallimore and an adverse action taken by Logan."  (*Id.*).  This argument misses the mark.

In his complaint, Leak specifically alleges that "Officer Logan told me face to face that he will teach me a lesson for writing a P.R.E.A. on Ms. Gallimore."  (ECF No. 1, PageID.14).  Leak further alleges that Officer Logan then took adverse action against him by requiring him to perform work that exceeded the limitations set forth in his medical detail.  (*Id.*).  These assertions would constitute direct evidence of retaliation.  *See Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010) (plaintiff alleged direct evidence of a retaliatory motive based on purported statements by two prison staff members); *Ashley*, 2023 WL 2910533, at *6 (finding material question of fact where prisoner testified that "[defendant prison official] told him that the confiscation [of his medical supplies] was in response to [his] filing of administrative grievances").  Thus, at the summary judgment stage, where Defendants have come forward with no evidence to the contrary and have otherwise failed to rebut Leak's allegations, a genuine issue of material fact exists as to the causation prong of the analysis.

In sum, for all of the foregoing reasons, Leak has introduced sufficient evidence to

create a genuine issue of material fact as to his First Amendment retaliation claim against Officer Logan, and summary judgment should be denied as to that claim.

3.     *Leak's Due Process Claim Against Warden DeAngelo*

Finally, the arm injury allegedly caused by Officer Logan in February 2021 forms the foundation of Leak's due process claim against Warden DeAngelo.  As set forth above, Leak alleges that Warden DeAngelo violated his Fourteenth Amendment due process rights[7] by improperly investigating his allegations of abuse, retaliation, and physical injury, on the wrong date.  (ECF No. 1, PageID.5).  Specifically, Leak alleges that he "clearly state[d]: 'Review Camera on 2-21-2021'" but "staff intentionally reviewed camera on February 12, 2021." (*Id.*).  Leak believes that this was a cover-up to deny the fact that the abuse, retaliation, and injury ever occurred.  (*Id.*).  But, even if Leak's allegations are accepted as true in this respect, he has failed to state a claim for a due process violation. "The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure." *Rodriguez-Arango v. Pancheri*, No. 23-cv-34, 2023 WL 2552366, at *3 (W.D. Mich. Mar. 17, 2023) (citing cases); *see also Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (a prisoner does not

---

[7] Beyond his due process claim, Leak also alleges that Warden DeAngelo's failure to conduct even a "minimal investigation" makes her liable for cruel and unusual punishment under the Eighth Amendment.  (ECF No. 1, PageID.7).  There is no merit to this assertion, however.  As set forth above, in order to succeed on such a claim, Leak must establish that he was exposed to a substantial risk of serious harm, and that *Warden DeAngelo* actually knew of and disregarded that substantial risk.  *See Farmer*, 511 U.S. at 843-44.  Here, where the only allegation is that Warden DeAngelo improperly investigated his grievance, Leak has not established that she knew of and disregarded a substantial risk of harm; indeed, by the time Warden DeAngelo responded to Leak's grievance, the alleged harm had already occurred.  Thus, Leak's Eighth Amendment claim against Warden DeAngelo should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

have a constitutionally protected interest in a prison grievance procedure or the right to an effective procedure).  Thus, Leak's due process claim against Warden DeAngelo should be dismissed pursuant to Rule 12(b)(6).[8]

## III.    CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment **(ECF No. 31)** be **GRANTED IN PART** and **DENIED IN PART**, with Leak's only remaining claims being his Eighth Amendment medical detail claim and his First Amendment retaliation claim against Officer Logan.


Dated: April 21, 2023                         s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                                      United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*,

---

[8] In his complaint, Leak also alleges that Warden DeAngelo "became responsible for the due process violations when she failed to correct them in the course of performing her supervisory duties." (ECF No. 1, PageID.6).  But there is no § 1983 liability based upon a theory of *respondeat superior*.  *See, e.g., Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *see also Woods v. Washington*, No. 23-cv-22, 2023 WL 2494401, at *9 (W.D. Mich. Mar. 14, 2023) ("§ 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance).  Thus, this aspect of Leak's claim against Warden DeAngelo also fails.

474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991);

*United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections

which raise some issues, but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge.  A party may respond to another

party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P.

72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address

specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 21, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
